IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAKIA HAMPTON,

    Plaintiff,

      v.

PUBLIX SUPER MARKETS, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-00089-TWT

## OPINION AND ORDER

This is a personal injury action. It is before the Court on the Defendant

Publix Super Markets, Inc.'s Motion for Summary Judgment [Doc. 57] and the

Defendant Maplebear Inc.'s Motion for Summary Judgment [Doc. 64]. For the

following reasons, Defendant Publix's Motion for Summary Judgment [Doc. 57]

is GRANTED in part and DENIED in part, and Defendant Maplebear Inc.'s

Motion for Summary Judgment [Doc. 64] is GRANTED.

### I.   Background[1]

---

[1] At the outset, the Court notes that on a summary judgment, the Court views the evidence presented by the parties in the light most favorable to the nonmovant, Plaintiff, and has drawn all justified inferences in favor of Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sunbeam TV Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of fact that are immaterial, or presented as argument or legal conclusion, or any fact not supported by citation evidence (including page or paragraph number). N.D. Ga. LR 56.1(B)(1). Further, the Court accepts as admitted those facts in Publix's and Instacart's Statement of Material Facts that have not been specifically controverted with citation to the relevant portions of the record. *See* N.D. Ga. LR 56.1(B)(2).

## A. Procedural Background

Plaintiff Nakia Hampton originally filed this personal action injury against Defendant Publix Super Markets, Inc. ("Publix"), Defendant Maplebear, Inc. dba Instacart ("Instacart"), Defendant John Doe Corporation and John Doe in state court. (Compl., ¶ 1). Publix and Instacart jointly removed it to federal court. (*Id.* ¶ 3–13). Hampton asserts claims for premises liability (Count One), vicarious liability (Count Two), negligent training and supervision (Count Three), and agency liability (Count Four) against Publix based on its failure to maintain safe premises, negligent inspection and supervision of training of employees responsible for inspecting, cleaning, and maintaining the premises, and being liable as John Doe's principal. (*Id.* ¶¶ 11–27). She also seeks to recover agency liability (Count Four) against Instacart as John Doe's principal. (*Id.* ¶¶ 25–27).

The Court derives the following facts from Plaintiff's Statement of Additional Material Facts, (Pl. Statement of Additional Material Facts, Doc. 61), Defendant Publix's Statement of Undisputed Material Facts (Def. Publix's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J., [Doc. 57]), and Defendant Maplebear, Inc. d/b/a Instacart's Statement of Undisputed Material Facts, (Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J., [Doc. 64]), the responses and replies thereto, and this Court's own review of the record.

2

## B. The Incident

On February 3, 2022, Hampton was an invitee at the Publix store located at 13015 Brown Bridge Road in Covington, Georgia. (Def. Publix's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 1). Hampton injured her neck and back in the fall. (*Id.* ¶ 4). The incident was captured on CCTV camera. (*Id.* ¶ 2). Hampton claims the video footage is of poor quality, distorted and pixelated, making it difficult to identify the liquid before her fall.[2] (Pl.'s Statement of Additional Material Facts, ¶ 1). Publix's witnesses have testified they cannot see the liquid on the floor in the video. (*Id.* ¶ 2). After Hampton fell, the liquid soaked through her clothes and shorts and was on her arm.[3] (*Id.* ¶ 3). Hampton did not see the liquid on the floor until after she fell. (Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 9). Four minutes before Hampton's fall, six Publix employees were in the immediate area, including a worker within a foot

---

[2] Publix disputes this. Publix states an associate can be seen walking through the area eight minutes before the liquid is first visible on the ground at 11:32:54 and once the liquid was on the ground, it remained there for two minutes and fifty-seven seconds. (Def. Publix's Resp. to Pl.'s Statement of Additional Material Facts, ¶¶ 2,5, 7–8).

[3] Publix denies that Hampton had one side "soaked through her clothes" as that was not explicitly testified to during Hampton's deposition. (Def. Publix's Resp. to Pl.'s Statement of Additional Material Facts, ¶ 1–3). It is undisputed however, that Hampton's "one side was wet, leg, and shorts, and arm." (*See* Hampton Dep. at 32:22–25). Thus, the Court deems Pl.'s Statement of Additional Material Facts, ¶ 3 admitted in so much as it correctly quotes the Plaintiff's deposition transcript.

of the area later cleaned up by Defendant's employees on the spill mat. (Pl.'s Statement of Additional Material Facts ¶ 15). Three minutes before Hampton's fall, five Publix employees were in the area including a worker within a foot of the area. (*Id.* ¶ 16). Two minutes before Hampton's fall, six employees were in the immediate area, including a Publix employee near and within feet of Hampton's fall. (*Id.* ¶ 17). One minute before Hampton's fall, eight employees were in the area.[4] (*Id.* ¶ 18). After Hampton fell, video stills showed employees wiping up the floor at the spill mat. (*Id.* ¶ 6). The video showed employees wiping up the floor between Hampton and the black spill mat ,(*Id.* ¶ 7), around Hampton's head, (*Id.* ¶ 8), near the cooler, (*Id.* ¶ 9), near the display case and cooler by Hampton's feet, (*Id.* ¶ 10), and in front of the display case, (*Id.* ¶ 11). The black mat was in the area due to concern that patrons would spill drinks and ice on the floor from the drink dispensing machine. (*Id.* ¶ 12).

Publix asserts that the incident was captured on CCTV camera and showed a Publix associate walking through the deli area less than eight

---

[4] Publix disputes this and asserts that in the minutes before Hampton's fall, various workers were in the "immediate area" and actively engaged in serving other customers behind the deli and bakery counters. (*See* Def. Publix's Resp. to Pl.'s Statement of Additional Material Facts, ¶¶ 15–18). The video clearly demonstrates that employees are behind the deli counter actively assisting customers or engaged in other work, and "in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account, and view the facts in light depicted by the videotape." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation modified).

minutes before the fall, with no liquid visible on the floor at that time[5]. (Def. Publix Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶¶ 2, 5). As Hampton waited in the deli section, two shopping carts were in the area of the eventual fall.[6] (*Id.* ¶ 6). The liquid first appeared on the floor at 11:32:54 and was on the floor for a maximum of two minutes and fifty-seven seconds.[7] (*Id.* ¶¶ 7–8). No Publix associates walked through the area after the liquid appeared and Hampton fell.[8] (*Id.* ¶ 9).

---

[5] Hampton denies the video quality has enough definition to show liquid on the floor. (Pl.'s Resp. to Def. Statement of Material Facts ¶ 5).

[6] In response to Def. Publix Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 6, Hampton states that the video showed multiple Publix employees in the area and within view of the large floor area that the employees wiped clean after the fall. (*See* Pl.'s Resp. to Def. Statement of Material Facts, ¶ 6). But this mainly refers to after the fall, whereas Publix's statement addresses the scene before the fall. Hampton does not contradict or dispute the before the fall statement about two carts being present in the area, so Def. Publix Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J.¶ 6 is deemed admitted.

[7] Hampton disputes both these facts because Publix's witnesses said the liquid was not visible in the video. (*See* Pl.'s Resp. to Def. Statement of Material Facts ¶¶ 7–8). (*See also* Moncus Dep. at 195:4–11; Destorch Dep. at 62:20–23).

[8] In response to Def. Publix Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J.¶ 9, Hampton states employees were seen walking directly to the area at 11:30:54 and 11:31:18 in Exs. 24–25. (*See* Pl.'s Resp. to Def. Statement of Material Facts, at 62–63). The video clearly shows employees are behind the counter or actively assisting other customers and "in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account, and view the facts in light depicted by the videotape." *Shaw*, 884 F.3d at 1098 (citation modified). Further, Hampton states the liquid is not visible on the video. (Pl.'s Resp. to Def. Statement of Material Facts ¶ 9).

Instacart asserts the video footage's quality and distance from the incident "severely inhibits one from discerning on what kind of foreign substance [Hampton] slipped and fell." (Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 8). Before the fall, a woman in a purple jacket moved her shopping cart from the approximate area that Hampton fell. (*Id.* ¶ 5). Another customer moved her shopping cart to the same area at the same time. (*Id.* ¶ 6). At approximately 11:37 am, the woman in the purple jacket entered the checkout aisle to purchase items in her cart and discovered one of the water bottles was leaking; the bottle was removed and appeared to have been "mostly full."[9] (*Id.* ¶ 7).

## C. Source of the Water

Hampton did not see anyone spill a liquid on the floor and was uncertain how the foreign substance came to be on the floor. (Def. Mapblebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 9). The store manager at the time, Matthew Moncus, did not witness Hampton slip and fall, did not see the water on the floor where Hampton fell, and did not know where the water originated from.[10] (*Id.* ¶¶ 10–11). The footage did not

---

[9] Publix disputes "mostly full" as witness opinion and not fact but otherwise does not dispute the statement. As such, the Court will deem it admitted. *See* N.D. Ga. LR 56.1(B)(2).

[10] Publix avers that the video clearly shows the liquid came from one of the two shopping carts in the area and that the liquid was first visible on the floor at 11:32:54. (Def. Publix's Resp. to Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 11).

depict water coming from the woman in the purple jacket's cart in the deli area.[11] (*Id.* ¶ 12). Moncus did not witness any liquid coming from the woman in the purple jacket's shopping cart when in the deli area or anywhere else.[12] (*Id.* ¶ 13). Publix's corporate representative, Joseph Destorch, also testified to being unable to see what, if anything, was leaking from the woman in the purple jacket's shopping cart. (*Id.*). Hampton did not notice any track marks on the floor of a customer pushing a shopping cart through a puddle of water and Moncus did not know the route the woman in purple jacket took from the deli area to the checkout register. (*Id.* ¶¶ 14–15). Moncus stated only one water bottle in the woman's cart was leaking; he did not see the leaking bottle, did not know the size of the water bottle in the six pack, did not know the extent that the water bottle was broken, and did not know the amount of water that came out of the water bottle in the customer's cart.[13] (*Id.* ¶¶ 17 –19). Similarly,

---

[11] Publix again avers that the video shows the liquid came from one of the two carts in the area and the liquid was visible on the floor at 11:32:54, and states that the woman in the purple jacket was later identified by the store manager Moncus as an Instacart shopper. (Def. Publix's Resp. to Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 12).

[12] Publix disputes this statement as the video's reflection shows water visible on the floor after the two shopping carts moved at 11:32:54 and one of the carts was used by the woman in the purple jacket. (Def. Publix's Resp. to Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 13). This is clear for the video but does not refute what Moncus personally saw. Thus, and in keeping with N.D. Ga. LR 56.1(B)(2)., the Court will deem Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 13 admitted as it pertains to Moncus.

[13] Publix asserts that the video clearly shows the bottle leaking and a

Destorch could not attest how much water leaked from the water bottle.[14] (*Id.* ¶ 20). Hampton theory is that the subject water came from a soda machine near the area where the slip and fall occurred.[15] (*Id.* ¶ 22).

### D. Publix Policy on Spills

Publix's Spill Response and Waste Handling process dictates a different process for handling small spills and large spills, with small spills only requiring an employee to clean with a paper towel, but large spills necessitating placing signs, having employees stay in the area, and using a mop and bucket to clean.[16] (Pl.'s Statement of Additional Material Facts ¶ 4).

---

leaking water bottle is visible when the woman in the purple jacket is checking out. (Def. Publix's Resp. to Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 18). When Publix refuted Instacart's fact, it did not include specific citations to evidence. Following N.D. Ga. LR 56.1(B)(2)(a)(2), the Court will deem Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 19 as admitted.

[14] Publix disputes the amount characterized in "how much water leaked from the bottle that was found leaking" involves opinion testimony rather than fact. (Def. Publix's Resp. to Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 20). However, Destorch was speaking to his personal perception of the amount of water leaking from the bottle. (*See* Destorch Dep., at 62:17–19). Without citations to specific evidence contradicting his statements, the Court will deem this admitted. *See* N.D. Ga. LR 56.1(B)(2).

[15] Publix disputes that a party's theory is not a material fact, but instead purely speculative and contrary to clear video evidence. N.D. Ga. LR 56.1(B)(1), states "[t]he Court will not consider any fact . . . stated as an issue or legal conclusion." The Court there will not admit Def. Maplebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J., ¶ 22.

[16] Publix asserts that the policy does not "mention of any distinction between 'small' versus 'large' spills." (*See* Def. Publix's Resp. to Pl.'s Statement of Additional Material Facts, ¶ 4). Instead, the policy requires the associate to assess the individual situation and use appropriate clean-up tools in the

The video stills showed the liquid in the area was cleaned as a large spill.[17] (*Id.* ¶ 5).

### E. Customers with Shopping Cart

The parties do not dispute these facts. Publix stated it did not know if the woman in the purple jacket was an active Instacart shopper during the incident. (Def. Mapblebear's Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 23). Presently, none of the parties know the identity of the woman in the purple jacket. (*Id.* ¶ 24). Moncus did not know if the customer was shopping for the Instacart app on the incident date, and believed the customer was an Instacart shopper based on the impression she had previously shopped at the store as one. (*Id.* ¶¶ 25–26). The woman in the purple jacket did not tell Moncus she was an Instacart shopper on the date of the incident, and Instacart shoppers are not assigned to specific Publix stores. (*Id.* ¶¶ 27–28). Moncus stated he "kn[e]w nothing about her" as he had never conversed with her, and it is unknown if she shopped at the Publix store for

---

clean-up process. (*Id.*). This statement provides additional context, as the policy does illustrate a difference between small, medium, and large spills. (*See* Manager's Reference Libr., Ex. C, at 47). Pl.'s Statement of Additional Material Facts ¶ 4 is deemed admitted.

[17] Publix disputes the characterization as "large" because the corporate representative testified the manner of which spills are cleaned depends on the situation and does not require the use of certain materials. (*See* Def. Publix's Resp. to Pl.'s Statement of Additional Material Facts ¶ 5). This provides additional context but does not deny the manner the spill was cleaned up in. As such, Pl.'s Statement of Additional Material Facts ¶ 5 is deemed admitted.

herself. (*Id.* ¶ 29). Moncus testified from experience that shoppers using the Instacart app are indistinguishable from other shoppers except for at least one time he remembered seeing an Instacart shopper wearing an Instacart lanyard. (*Id.* ¶ 30). The woman in the purple jacket was not wearing any clothing or accessories to identify herself as an Instacart shopper. (*Id.* ¶ 31). Following Hampton's fall, no one identified themselves as an Instacart shopper. (*Id.* ¶ 32). Using CCTV footage and the time and location of the woman in the purple jacket's transaction, Publix identified the transaction's information. (*Id.* ¶ 33). Instacart provides a payment card to shoppers as an option when shopping to buy items; this allows Instacart to identify transactions made by a shopper using the transaction's information such as last four digits of the card provided to a shopper. (*Id.* ¶¶ 34–35). Instacart searched its system using the Publix- provided transaction information and the transaction's time by the woman in the purple jacket. (*Id.* ¶ 36). Instacart did not find any transactions at the target time, so the Instacart platform was not used. (*Id.* ¶ 37).

Instacart is a technology platform and company that allows delivery of groceries and retail items. (*Id.* ¶ 38). When becoming a shopper, an individual must review and execute Instacart's Independent Contractor Agreement ("ICA"), which provides that shoppers are independent contractors and operating a separate business from Instacart. (*Id.* ¶¶ 39–40). The ICA places

10

the responsibility on shoppers for how the work is completed, the tools and instrumentalities used, and costs and expenses related to the work. (*Id.* ¶ 41). Individuals must provide a valid driver's license, pass a background check, and download the Shopper App to be hired. (*Id.* ¶ 42). Individual shoppers have full autonomy in interacting with the Instacart platform, have no boss or supervisor, determine their own schedule, and have freedom to accept or reject any delivery opportunity presented as well as the order in which to purchase items. (*Id.* ¶¶ 43–44). Shoppers determine the particular route to and from the retailer to the requested drop-off location while using independent third-party navigation applications for directions, which allows anyone to become a shopper without needing familiarity with the local area. (*Id.* ¶ 45). Instacart provides shoppers with an optional use payment card to purchase items for a delivery opportunity. (*Id.* ¶ 50). Instacart does not pay shoppers a salary or hourly wage but pays after each delivery is completed with the shopper receiving 100% of any tip. (*Id.* ¶ 48). Instacart shoppers are paid through a Form 1099 and do not withhold taxes, and do not have employment benefits, healthcare, or paid time off provided by Instacart. (*Id.*). Instacart can only terminate the relationship if shoppers breach the ICA's terms, but shoppers can terminate their relationship with Instacart for any reason after providing notice. (*Id.* ¶ 49).

## II.  Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawing the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgement must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). For cases based upon diversity jurisdiction, a federal court is required to apply the law of the state in which the federal court sits. *See O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992).

## III. Discussion

Publix claims to be entitled to summary judgment on Hampton's claims because the evidence shows that it had no actual or constructive knowledge of the alleged substance that caused Hampton's fall. (Publix's Br. in Supp. of Mot. for Summ. J., Doc. 57 at 1–2). Further, Publix claims Hampton cannot show evidence of negligence in training and supervision. (*Id.* at 11–12). In response,

Hampton concedes Publix was not negligent in hiring, training, or supervision of its associates. (Pl.'s Br.in Resp. of Def. Publix Mot. for Summ. J., at 12). Hampton also responds that Publix had constructive knowledge as a matter of law. (*Id.* at 1–2, 9–12).

Instacart claims to be entitled to summary judgment because the liquid's source being the woman in the purple jacket's cart is based on speculation and inference. (Def. Instacart Mot. for Summ. J., Doc. 64 at 6). Further, Instacart states there is no evidence that the woman was an Instacart shopper using the platform. (*Id.*). Instacart asserts that even if the water did come from her shopping cart, Instacart shoppers are independent contractors and Instacart is thus not liable for the shopper's negligence. (*Id.*).

### A. Premises Liability

Under Georgia law, an owner of land is liable for injuries to invitees caused by the owner's failure to exercise ordinary care in keeping the premises safe. O.C.G.A. § 51-3-1. The owner's duty to exercise ordinary care "requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge." *Kauffman v. E. Food & Gas, Inc.*, 246 Ga. App. 103, 104 (2000). "[T]o recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that

the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.,* 268 Ga. 735, 748 (1997). Generally, "[t]here are two established ways to prove constructive knowledge in a slip and fall case: (1) show that the employee of the defendant was in the immediate area of the hazard and could have easily seen it, or (2) show that the foreign substance remained long enough that ordinary diligence by the defendant should have discovered it." *Mock v. Kroger Co.,* 267 Ga. App. 1, 2 (2004). Thus, to survive summary judgment, Hampton must show there is a genuine issue of material fact as to whether Publix had constructive knowledge of the alleged hazard. The Court addresses both prongs of constructive knowledge test.

### 1. Whether a Publix Employee was in the Immediate Area of the Hazard and Could Have Easily Seen It

Publix argues that it lacked constructive knowledge under the first prong because when an employee was last in the area, there was no visible liquid on the floor. (Publix's Br. in Supp. of Mot. for Summ. J., 7–8). Hampton argues that the video stills and video footage show up to eight employees in the immediate area within feet of Hampton's fall and the cleanup area, in addition to the fall site being in a "high traffic" area where employees frequently traveled through, such that these employees were in a position to have observed or should have observed the spill. (Pl.'s Br. in Resp. to Def. Publix. Mot. for Summ. J., 10).

Under this first prong, "showing that an employee was merely working in the area of a foreign substance is not enough. The employee must have been in a position to have easily seen and removed the substance." *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1999). The pertinent inquiry for constructive knowledge is whether "the defendant had an employee in the immediate area of the hazard who could have easily seen and removed the hazard before the plaintiff's fall." *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 250 (2010) (finding a slip-and-fall plaintiff did not establish constructive knowledge when the plaintiff admitted "the grease spot was not obvious until after he had fallen"). The employees in the deli and bakery counter area of the fall are actively seen behind the counters engaging with customers and other tasks. (*See* Pl.'s Br. in Resp. to Def. Publix Mot. for Summ. J., Exs. 24–25). As a result, their viewpoints of the area of Hampton's fall were obstructed. *See id.*; *compare Mack v. Cheddar's Casual Café, Inc.*, 2022 WL 4596688, at *7, (N.D. Ga. June 17, 2022) (holding constructive knowledge was in dispute when an employee in the immediate vicinity of a fall stepped over fallen menus and had an unobstructed view of this hazard). When an employee is working in the area but not facing the area where the fall occurred, or has an obstructed or blocked view, constructive knowledge may not be imputed. *Lovins*, 236 Ga. App. at 586. Hampton only noticed the liquid when she felt it after she had fallen, *see* Hampton Dep. at 32:8–18, and "a plaintiff's own admission that the substance

15

was difficult to detect is often fatal to her claim of constructive knowledge under the first prong." *Tolbert v. Publix Super Markets, Inc.*, 634 F. Supp. 3d 1319, 1324 (N.D. Ga. 2022) (quoting *Chastain v. CF Ga. N. Dekalb L.P.*, 256 Ga. App. 802, 804 (2002)). The Court finds that Hampton cannot establish constructive knowledge under the first prong. Hampton is similarly situated to the plaintiff in *Mucyo v. Publix Super Markets, Inc.*, 301 Ga. App. 599, 601 (2009) (holding the plaintiff did not establish that the employee could easily see and remove the hazard when there was no evidence that the purported hazard was readily visible to the plaintiff or others in her immediate vicinity at the time she fell). Thus, Hampton will have to establish constructive knowledge under the second prong or actual knowledge in order to survive Publix's motion for summary judgment.

### 2. Whether the Foreign Substance Remained Long Enough That Ordinary Diligence by Publix Should Have Discovered It

A plaintiff can show constructive knowledge when "the foreign substance remained long enough that ordinary diligence by the defendant should have discovered it." *Mock*, 267 Ga. App. at 2. "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Shepard v. Winn Dixie Stores, Inc.*, 241

16

Ga. App. 746, 748 (1999) (citation modified). The plaintiff does not need to show the duration the hazard was present for unless the owner demonstrated its inspection procedures. *See Johnson v. All Am. Quality Foods, Inc.*, 340 Ga. App. 664, 666 (2017). Georgia does not have a definitive time frame the hazard must exist for in order to create an inference of constructive knowledge, but the Georgia Court of Appeals has consistently affirmed time periods of less than fifteen minutes. *See Matthews v. The Varsity, Inc.*, 248 Ga. App. 512, 512–13 (2001) (holding five minutes was not constructive knowledge); *Lovins*, 236 Ga. App. at 586 (holding ten minutes did not give owner constructive knowledge); *Kroger Co. v. Williams*, 274 Ga. App. 177, 179 (2005) (holding five minutes was a short time that did not allow for constructive knowledge). "Regardless of the adequacy of any inspection program, when an owner shows that an inspection occurred within a brief period of time prior to an invitee's fall, the inspection procedure was adequate as a matter of law and defeats an invitee's negligence action." *Mucyo*, 301 Ga. App. at 601.

Publix implicitly argues that its inspection policy is reasonable as a matter of law and that its employees carried out the policy, so the alleged hazard was present for only two minutes and fifty-seven seconds based on the time the water allegedly spilled from a cart. (Publix's Br. in Supp. of Mot. for Summ. J., at 8–10). Hampton responds that "a reasonable inspection procedure was not in place" and the procedure was not followed. (Pl.'s Br. in Resp. to Def.

17

Publix's Supp. of Mot. for Summ. J., at 10–12). Hampton supports its claim of unreasonable inspection procedures by turning to Publix's Corporate Managers' Reference Library for Customer Service and Store Operations and Spill Responses. (*Id.*, Exs. C–D). Plaintiff does not cite an analogous case to support its contention that Publix's inspection was unreasonable.

There is no need to resolve the issue of whether Publix's inspection policy was reasonable as a matter of law because Publix has shown the floor inspection happened about eight minutes before Plaintiff's fall. *S*ee Publix video 11:25-11:33; *see also Mucyo*, 301 Ga. App. at 601. The eight minute inspection time falls within Georgia's lawfully adequate fifteen-minute timeframe. *See Brown*, 305 Ga. App. at 252. Hampton cites no evidence in support of her argument that the inspection procedure was unreasonable, inadequate or not followed. A plaintiff cannot rely on speculation and conjecture to establish a genuine material dispute as to a failure of reasonable inspection procedures or a failure to follow procedures on the day of *injur*y. *See Canales v. Pilot Travel Ctrs. LLC*, 2020 WL 8093583 at *7 (N.D. Ga. Nov. 30, 2020). Therefore, Hampton has failed to establish the second prong of constructive knowledge as there is no genuine dispute that the foreign substance was not on the floor long enough to be discovered by Publix employees.

18

### 3. Actual Knowledge of the Hazard

Lastly, Publix argues it did not have any knowledge of the hazardous condition. (Def. Publix Br. in Supp. of its Mot. for Summ. J., at 10–11). Hampton asserts Publix had actual knowledge that the area was unusually dangerous because water was known to puddle there. (Pl.'s Br. in Resp. to Def. Publix Mot. for Summ. J., at 8–11).

"[A] proprietor is generally permitted a reasonable time after notice of a hazardous condition to exercise care in correcting such condition." *Pickering Corp. v. Goodwin*, 243 Ga. App. 831, 832 (2000). Further,

> [i]t is possible that, based on a prior history of such a number of similar hazardous occurrences or other facts that would put a proprietor on notice of the likelihood of the subject incident occurring, such fact would create a correspondingly higher duty on the proprietor to take appropriate prophylactic measures, i.e., having an attendant on duty to immediately clean up spills or post signs warning customers of the potential danger. Any such evidence would, of course, present a jury question as to the reasonableness of the proprietor's actions.

*Id.* at 833. It is genuinely disputed whether Publix had actual knowledge of the source of the liquid: Publix's drink dispenser or leaking water from a shopper's cart. *See generally* Publix video at 11:25:00–11:33:10. The presence of the black spill mat near the drink dispenser could indicate knowledge of the potential dangers the drink dispenser previously posed. *See* Moncus Dep. at 90:33–22; *see also River Place at Port Royal Condo. Ass'n, Inc. v. Sapp*, 358 Ga. App. 632, 635–36 (2021) (holding the "owner's superior knowledge of a condition" that

may expose invitees to unreasonable harm creates liability). While it is not in dispute that Hampton lacked knowledge of the hazard before falling, Hampton Dep. at 32:5–33:14, Hampton argues Publix did not take any precautions prior to her fall. *See* Pl.'s Br. in Resp. to Def. Publix Mot. for Summ. J., at 9. Therefore, because Publix's actual knowledge and whether ordinary care were exercised are in genuine dispute, the Court will deny summary judgment for premises liability.

## B. Vicarious Liability

"An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." O.C.G.A. § 51-2-4. "[A]n agent's negligence can be imputed to a principal under the doctrine of respondeat superior only if the agent qualifies as a 'servant' of the principal." *Statham v. Quang*, 321 Ga. 533, 539 (2025). "Under Georgia law, a master-servant relationship exists only where a principal has a significant degree of control over how an agent performs his work." *Id.* at 539. The key inquiry for premises liability differs depending on whether the injury arose from a preexisting condition or active negligence, such as a proprietor's acts or omissions when the plaintiff was on the premises. *See Belcher v. Ky. Fried Chicken Corp.*, 266 Ga. App. 556, 558 (2004). Liability for a pre-existing condition on the premises depends on the plaintiff's status as an invitee, a

20

licensee, or a trespasser. *See Lipham v. Federated Dept. Stores, Inc.*, 263 Ga. 865, 865 (1994). Owners are subject to premises liability if they are in possession of superior knowledge of the hazard. *Riley v. Sherwin-Williams Co.*, 2020 WL 1800509, at *2 (N.D. Ga. Feb. 13, 2020). Liability for active negligence results from an employee's negligent action where the negligence is attributable to the employer because of the employment relationship. *Id.* In contrast, premises liability exists when an employer has some degree of control over the property and could have warned about conditions presenting a risk of harm. *Lipham*, 263 Ga. at 865.

The disputed fact here is the source of the liquid that Hampton slipped on. Publix asserts it is from a shopper's cart that was not present long enough to notice and clean. *See generally* Def. Publix Mot. for Summ. J. at 11–12. Hampton and Instacart assert the water came from Publix's drink dispenser. *See* Pl. Br. in Resp. to Def. Publix Mot. for Summ. J., at 8. Thus, there is a genuine dispute of material fact as to whether the employer was in control of the hazard or could have warned its customers. *See id.*; *see also* Def. Maplebear's Mot. for Summ. J., at 15–16. Therefore, the claim for vicarious liability will survive summary judgment.

## C. Negligent Supervision and Training

Publix argues that it did not negligently train its employees, there is no causal link between the duty owed and the injury suffered, and Hampton did

21

not provide evidence of any employees' tendencies relevant to her alleged injuries. (Def. Publix's Mot. for Summ. J., at 20–21). "An employer has a duty to exercise 'ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable' that the employee's tendencies could cause the type of harm sustained by the plaintiff." *Remediation Res., Inc., v. Balding*, 281 Ga. App. 31, 34 (2006) (citation modified). The employer does not need to anticipate any particular consequences or the plaintiff's precise injuries. *See id.* "[T]o defeat summary judgment on this issue, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue." *Id.* Hampton offers no evidence but "concedes that Publix was not negligent in its hiring, training, or supervision of its associates as a matter of law." (Pl.'s Resp. to Def. Publix Mot. for Summ. J., at 12). Therefore, as there is no genuine dispute of material fact, the Court will grant the motion for summary judgment as to this claim.

### D. Agency liability

Instacart asserts it is speculation that the water came from a leaking water bottle from an Instacart shopper. (Def. Instacart's Mot. for Summ. J., at 6). It contends that the shopper was not identified to be using the platform during the transaction, but even if so, Instacart shoppers are independent contractors and Instacart is not liable for negligence. (*Id.*). "An employer

22

generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." O.C.G.A. § 51-2-4. "The issue in determining whether one was an employee or independent contractor is whether the employer retained the right to exercise control over the time, place or manner of the work performed." *Mwangi v. Fed. Nat'l Mortg. Assoc.*, 162 F. Supp. 3d 1331, 1338 (N.D. Ga 2016) (quoting *BellSouth Telecomms., Inc. v. Helton*, 215 Ga. App. 435, 435 (1994)). "Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." *Id.*

Hampton does not dispute that Instacart's shoppers are independent contractors, as set out within the agreement between Instacart and shoppers. (Sanchez Decl., ¶¶ 3–19). Hampton also does not dispute that the woman in the purple jacket did not have a connection to Instacart. (Pl.'s Resp. to Def. Maplebear Statement of Undisputed Facts, at 7–11). Without such a connection, Hampton's claim hinges on speculation, and "speculation and conjecture [are] insufficient to defeat summary judgment." *Pierri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1376 (N.D. Ga. 2005). Therefore, because employers are not liable for independent contractors and Hampton has not shown a connection between the woman in the purple jacket and Instacart, the

23

Court will grant Instacart's motion for summary judgment. And because Instacart is not liable on this Count, Hampton's claim for agency liability against Publix necessarily fails as well. The Court will thus grant both motions for summary judgment as to Count 4.

## IV.  Conclusion

For the foregoing reasons, Defendant Publix's Mot. for Summ. J. [Doc. 57] is GRANTED in part and DENIED in part. It is GRANTED as to Counts 3 and 4. It is otherwise DENIED. Counts 1 and 2 for premises liability and vicarious liability, respectively, remain with respect to Defendant Publix. Defendant Maplebear's Mot. for Summ. J. [Doc. 64] is GRANTED.

SO ORDERED, this ___23rd___ day of March, 2026.


THOMAS W. THRASH, JR.
United States District Judge

24